Christopher D. PRICKETT, et al., Plaintiff,

v.

DeKALB COUNTY, Defendant.

No. Civ.A. 1:97CV3395TWT.

United States District Court, N.D. Georgia, Atlanta Division.

March 29, 2000.

Allan Leroy Parks, Jr., Harlan Stuart Miller, III, Parks Chesin & Miller, Atlanta, GA, for plaintiffs.

Joan Frances Roach, Jonathan A. Weintraub, Office of DeKalb County Attorney, DeKalb County Administration Building, Decatur, GA, Benton J. Mathis, Jr., Dana Kristin Maine, Freeman Mathis & Gary, Atlanta, GA, for Dekalb County, defendant.

## ORDER

THRASH, District Judge.

This is an action brought by current and former Fire Services Bureau employees of the DeKalb County Department of Public Safety. They seek overtime compensation pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. The case is before the Court on Motions for Summary Judgment [Doc. 75 & 76] filed by Plaintiffs and Defendant. For the reasons set forth below, the Court denies Plaintiffs' Motion for Summary Judgment and grants Defendant's Motion for Summary Judgment.

## I. BACKGROUND

Plaintiffs are 426 current and former Fire Services Bureau employees of the DeKalb County Department of Public Safety. Defendant DeKalb County ("the County") is a political subdivision of the State of Georgia. The County's Department of Public Safety is divided into nine separate divisions: the Fire Services Bureau, the Police Services Bureau, the Emergency Medical Services Bureau, the Administrative Services Bureau, the Com-

munications Division, Animal Control, Internal Affairs, the Intelligence Unit, and the Emergency Management Unit. Prior to 1994, the County paid overtime compensation to employees of the Emergency Medical Services ("EMS") Bureau only within the parameters of a partial exemption to the Fair Labor Standards Act ("FLSA"). The County believed the exception protected it from having to pay EMS employees overtime pay based on a general 40 hour work week. In 1994, however, the County abandoned this policy after Judge Jack T. Camp of this Court ruled that the County could not rely on the FLSA partial exemption in refusing to provide overtime compensation to its EMS employees for hours in excess of 40 worked during a single week.

Plaintiffs allege that Judge Camp's decision regarding the EMS employees' right to overtime pay, continual budget constraints, shortages of EMS vehicles and personnel, a view among County political leaders that firefighters are underutilized if all they do is wait for fire calls, and a decline in the number of fire calls all combined to cause the County to reevaluate how it should provide emergency services to its residents. According to Plaintiffs, if the County had continued to meet its residents' EMS needs with only employees of the EMS Bureau, its costs would have escalated drastically once these employees were entitled to overtime compensation pursuant to the FLSA's general provisions. If, however, the County transferred some EMS duties to another bureau whose employees fall within a partial exemption to the FLSA, it likely could contain its costs more readily.

As a result, Plaintiffs allege that the County began to utilize employees of the Fire Services Bureau for medical emergencies that EMS employees alone would have responded to before Judge Camp's 1994 decision. Since this change, a majority of calls answered by the Fire Services Bureau have been for medical emergencies unrelated to fires. For example, in 1995, the Fire Services Bureau answered 17,558 medical emergency calls, 4,104 fire calls, and 8,622 unspecified "other" calls. In 1996, it answered 19,733 medical emergencies, 4,027 fire calls, and 10,028 other calls. That trend continued in the first four months of 1997, when the Fire Services Bureau answered 5,973 medical emergencies, 1,243 fire calls, and 3,010 other calls. Today, as a matter of dispatch protocol, the Fire Services Bureau routinely answers calls for such medical emergencies as insulin shock, chest pain, motor vehicle and pedestrian accidents, choking, diabetic comas, seizures, severe bleeding, drowning, gunshot and stab wounds, strokes and heart attacks, and industrial accidents. Furthermore, certification as an emergency medical technician has become a prerequisite for hiring and promotion within the Fire Services Bureau.

Calls, however, do not account for most of the firefighters' work time. Pursuant to an Order entered by this Court on November 16, 1998, discovery was limited to firefighters' activities at four representative fire stations between January 1, 1997, and June 30, 1997. DeKalb County compiled and provided to Plaintiffs activity data from both these four stations' logbooks and the National Fire Institute Reporting System ("NFIRS") computer program. While slight discrepancies exist between the two reporting systems because the NFIRS method counts each incident only once regardless of how many stations report to the scene, both sources nevertheless show that DeKalb firefighters during this time spent little more than ten percent of their time answering any calls—and less than four percent of their time answering medical emergency calls. The station logbooks show that the total amount of time firefighters spent responding to all calls during the representative time period was 10.16% of their total work time, and 3.76%

of their time was spent responding to medical emergency calls. The NFIRS information shows that the total amount of time firefighters spent responding to medical emergency calls was 3.48%.

Plaintiffs contend that their involvement in responding to medical emergency calls prevents DeKalb County from claiming the FLSA's partial exemption. They filed this action on November 10, 1997, naming DeKalb County, Public Safety Director Thomas Brown, and then—Fire Chief Carlos E. Perez as Defendants. Plaintiffs did not raise individual capacity claims against Defendants Brown and Perez and failed to state a claim against them in their official capacities, so this Court, in an Order dated December 1, 1998 [Doc. 42], granted Brown and Perez's Motions to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6). Both the Plaintiffs and DeKalb County have now filed Motions for Summary Judgment. Those motions are the subject of this Order.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court should view the evidence and any inferences that may be drawn in light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. DISCUSSION

### A. CONSTITUTIONALITY OF APPLYING THE FLSA TO DEKALB COUNTY

DeKalb County contends that applying the FLSA to it is unconstitutional because the Eleventh Amendment protects the County from being subjected to a FLSA suit in federal court without its consent. The County bases its argument on United States Supreme Court rulings during the past 25 years that constrain Congress' power to use the Commerce Clause and Section 5 of the Fourteenth Amendment to abrogate states' Eleventh Amendment immunity. *See, e.g., Kimel v. Florida Bd. of Regents*, —— U.S. ——, 120 S.Ct. 631, 145 L.Ed.2d 522(2000) (holding that the Age Discrimination in Employment Act ("ADEA") does not validly abrogate states' Eleventh Amendment immunity from suit by private individuals); *Alden v. Maine*, 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999) (holding that states are entitled to sovereign immunity from FLSA suits brought in state court); *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 72–73, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (holding that Congress cannot use its commerce power to abrogate states' sovereign immunity from suits in federal court); *National League of Cities v. Usery*, 426 U.S. 833, 851–52, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976) (holding that Congress' use of its power to regulate commerce cannot abrogate a state's sovereign immunity), *overruled by Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 531, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985) (holding that application of the FLSA to states and their political subdivisions does not contravene any limit on Congress' commerce power).

■ The County's brief is well-written, but adopting its arguments would lead this

Court to an incorrect application of current law.[1] Despite criticism in the last 20 years from some legal scholars who have argued that counties, as political subdivisions of the states, should be immune pursuant to the Eleventh Amendment from unconsented suits in federal court, *e.g.*, John V. Orth, *The Judicial Power of the United States* 119 (1987); Vicki C. Jackson, *One Hundred Years of Folly: The Eleventh Amendment and the 1988 Term*, 64 S.Cal. L.Rev. 51, 57 n. 23 (1990); Margreth Barrett, Comment, *The Denial of Eleventh Amendment Immunity to Political Subdivisions of the States: An Unjustified Strain on Federalism*, 1979 Duke L.J. 1042, 1049 (1979), the Supreme Court continues to adhere to its holding in *Lincoln County v. Luning*, 133 U.S. 529, 530, 10 S.Ct. 363, 33 L.Ed. 766 (1890), that counties are not protected by the Eleventh Amendment from suit in federal court. *See, e.g., Alden v. Maine*, 527 U.S. 706, 119 S.Ct. 2240, 2267–69, 144 L.Ed.2d 636 (1999) ("The second important limit to the principle of sovereign immunity is that it bars suits against States but not lesser entities."); *Hess v. Port Auth. Trans–Hudson Corp.*, 513 U.S. 30, 47, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994) ("[P]olitical subdivisions exist solely at the whim and behest of their State, yet cities and counties do not enjoy Eleventh Amendment immunity."); *Mount Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977) ("The bar of the Eleventh Amendment to suit in federal courts extends to States and state officials in appropriate circumstances, but does not extend to counties and similar municipal corporations.") (citations omitted). This Court cannot simply ignore 110 years of Supreme Court precedent. Because *Lincoln County* remains good law, DeKalb

County cannot legitimately claim that Eleventh Amendment immunity protects it from Plaintiffs' suit.

DeKalb County next contends that applying the FLSA to it is an unconstitutional exercise of Congress' Commerce Clause power because the statute does not substantially affect interstate commerce when applied to state and local governments. DeKalb County bases this argument on the Supreme Court's 1995 decision in *United States v. Lopez*, 514 U.S. 549, 551, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), where the Court held that Congress exceeded its Commerce Clause power when it enacted the Gun–Free School Zones Act of 1990. That act made it a federal offense "for any individual knowingly to possess a firearm at a place that the individual knows, or has reasonable cause to believe, is a school zone." *Id.* The Supreme Court concluded that the Gun–Free School Zones Act was unconstitutional because it did not "substantially affect" interstate commerce. *Id.* at 559, 115 S.Ct. 1624. Before *Lopez*, the Supreme Court had not struck down a Congressional exercise of the Commerce Clause as unconstitutional since 1936. *See Carter v. Carter Coal Co.*, 298 U.S. 238, 311–12, 56 S.Ct. 855, 80 L.Ed. 1160 (1936) (holding unconstitutional the Bituminous Coal Conservation Act of 1935). The Court distinguished *Lopez* from its previous holdings in Commerce Clause cases by explaining that there exist only two types of laws that the Court has upheld as substantially affecting interstate commerce: (1) "regulations of activities that arise out of or are concerned with a commercial transaction, which viewed in the aggregate, substantially affects interstate commerce," and (2) regulations that include a jurisdictional element to ensure, "through

---

1. Despite the fact that DeKalb County's brief is extremely well written, this Court is quite troubled by its loose interpretation of the law in parts of its brief and its failure to notify the Court of adverse controlling authority in other parts of the brief. For example, not once

does the County cite, much less explain, *Lincoln County v. Luning*, 133 U.S. 529, 530, 10 S.Ct. 363, 33 L.Ed. 766 (1890), and its progeny—cases unmistakably holding that counties are not protected by the Eleventh Amendment.

case-by-case inquiry," that each specific application of the regulation involves activity that in fact affects interstate commerce. *Id.* at 561, 115 S.Ct. 1624. The Court emphasized that it had never extended the "substantially affects" test to uphold the regulation of a noneconomic activity in the absence of a jurisdictional element. *Id.* at 560, 115 S.Ct. 1624. The Supreme Court held that the Gun–Free School Zones Act was an invalid exercise of Congress' Commerce Clause power because the statute neither regulated a commercial activity nor contained any jurisdictional requirement that possession of a firearm be connected in any way to interstate commerce. The Court said that a different conclusion would "convert Congressional authority under the Commerce Clause to a general police power of the sort retained by the States." *Id.* at 567, 115 S.Ct. 1624. DeKalb County contends that a ruling by this Court that the FLSA applies to the County likewise would convert the Commerce Clause to one of general police power because the FLSA, as applied to the County, does not regulate a commercial activity. To support this argument, the County emphasizes that the principal function of its Fire Services Bureau is to prevent and suppress fires—an activity that not only is intrastate, but also is intra-county. Because the County's fire prevention and suppression activities do not substantially affect interstate commerce, the County contends that Congress cannot apply the provisions of the FLSA to it.

This Court cannot agree with the County that the FLSA, as applied to DeKalb County, fails to concern a commercial transaction that, when viewed in the aggregate, substantially affects interstate commerce. The County asks this Court to look simply at the fire-related duties of the County to determine whether the FLSA, as applied to it, substantially affects interstate commerce. The question here, though, is not whether the Fire Services

Bureau's fire-related duties substantially affect interstate commerce, but whether its labor practices do. The FLSA attempts to regulate the Fire Services Bureau's labor practices, not its fire prevention and suppression activities. And the Supreme Court has held repeatedly since its 1937 landmark decision in *NLRB v. Jones & Laughlin Steel Corp.,* 301 U.S. 1, 37–39, 57 S.Ct. 615, 81 L.Ed. 893 (1937), that federal labor laws do substantially affect interstate commerce. *See, e.g., Garcia v. San Antonio Metro. Transit Auth.,* 469 U.S. 528, 537, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985) (upholding FLSA as applied to state and local governments as a valid exercise of Congress' commerce power); *Fry v. United States,* 421 U.S. 542, 548, 95 S.Ct. 1792, 44 L.Ed.2d 363 (1975) (upholding the Economic Stabilization Act as applied to state and local governments); *Maryland v. Wirtz,* 392 U.S. 183, 194–99, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968) (finding that application of FLSA to employees of state and local government institutions such as hospitals and schools substantially affects commerce), *rev'd on other grounds, National League of Cities v. Usery,* 426 U.S. 833, 855, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976); *United States v. Darby,* 312 U.S. 100, 121–22, 61 S.Ct. 451, 85 L.Ed. 609 (1941) (upholding FLSA unanimously); *NLRB v. Jones & Laughlin Steel Corp.,* 301 U.S. 1, 37–39, 57 S.Ct. 615, 81 L.Ed. 893 (1937) (upholding National Labor Relations Act); *National League of Cities v. Usery,* 426 U.S. 833, 841, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976) (noting that appellants "in no way challenge" that FLSA is "undoubtedly within the scope of the Commerce Clause.").

■ In applying the FLSA to the DeKalb County Fire Services Bureau, Congress is not attempting to regulate, for example, the type of water hoses that firefighters can use or the number of fire hydrants required per square mile. Instead, the FLSA, as applied to DeKalb

County, merely attempts to regulate the County's labor practices—practices that the Supreme Court repeatedly has held substantially affect interstate commerce and, therefore, are within Congress' power to regulate commerce. Because of the Supreme Court's numerous holdings that labor practices substantially affect interstate commerce, this Court cannot rule that the FLSA, as applied to DeKalb County, is an unconstitutional exercise of power under the Commerce Clause.

DeKalb County's final constitutional argument is that even if the FLSA does substantially affect interstate commerce and, therefore, is a valid exercise of Congress' Commerce Clause power in general, the Tenth Amendment nonetheless prevents Congress from applying the FLSA to states and their political subdivisions. The Tenth Amendment provides, "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. Amend. X. In *National League of Cities v. Usery*, 426 U.S. 833, 852, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), the Supreme Court held in a 5–4 decision that the Tenth Amendment protected states and their political subdivisions from being subject to the FLSA for those activities which can be classified as "traditional government functions." *Id.* at 849–52, 96 S.Ct. 2465. Nine years later, though, the Supreme Court overruled *National League of Cities* in another 5–4 decision and held that extending the FLSA to employees of a local mass transit system was constitutional. *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 531, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985).

In a radical departure from its *National League of Cities* holding, the Supreme Court in *Garcia* stated that the only limitation that the Constitution places on the Commerce Clause is "one of process rather than one of result." *Id.* at 554, 105 S.Ct. 1005. As support, the Court noted that the Constitution's framers provided the role for the states in the selection of both the Executive and Legislative branches of the federal government:

> The States were vested with indirect influence over the House of Representatives and the Presidency by their control of electoral qualifications and their role in Presidential elections. They were given more direct influence in the Senate, where each State received equal representation and each Senator was to be selected by the legislature of his State. The significance attached to the States' equal representation in the Senate is underscored by the prohibition of any constitutional amendment divesting a State of equal representation without the State's consent.

*Id.* at 551, 105 S.Ct. 1005 (citations omitted). Based on this structure of our national government, the Supreme Court concluded that "the Framers chose to rely on a federal system in which special restraints on federal power over the States inhered principally in the workings of the National Government itself, rather than in discrete limitations on the objects of federal authority." *Id.* at 552, 105 S.Ct. 1005. For that reason, state sovereignty is protected by procedural safeguards inherent in the structure of the federal system rather than judicial limitations on federal power. *Id.* Notably, though, the *Garcia* decision was rendered over a strongly worded dissent by Justice Powell in which he argued that Court's opinion "effectively reduces the Tenth Amendment to meaningless rhetoric when Congress acts pursuant to the Commerce Clause." *Id.* at 560, 105 S.Ct. 1005. According to Justice Powell, the states' role in our federal system is not merely a matter of "legislative grace" whereby federal political officials alone are the sole judges of the limits of their own power. *Id.* at 567, 105 S.Ct. 1005.

Although Justice Powell may have lost the battle in *Garcia,* his interpretation

**1364**

may ultimately win the war. During the last eight years the Supreme Court has begun to place limits on Congress' power to regulate states pursuant to its Commerce Clause power. *See Alden v. Maine,* 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999) (holding in FLSA case that the Commerce Clause does not allow Congress to subject a state to suit in state court without its consent); *Printz v. United States,* 521 U.S. 898, 924, 935, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997) (invalidating as an invalid exercise of Congress' commerce power, *inter alia,* those provisions of the Brady Handgun Violence Prevention Act that require the Attorney General to establish a national background check system by mandating local law enforcement assistance); *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 72–73, 116 S.Ct. 1114, 134 L.Ed.2d 252 (holding that Congress may not use its Article I Commerce Clause power to abrogate a state's Eleventh Amendment immunity from suit in federal court); *United States v. Lopez,* 514 U.S. 549, 567, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995) (holding that the Gun–Free School Zones Act of 1990 exceeds Congress' Commerce Clause authority because it does not substantially affect interstate commerce); *New York v. United States,* 505 U.S. 144, 166, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992) (holding that Congress cannot use its Commerce Clause power to compel states to enact a federal regulatory program); *Kimel v. Florida Bd. of Regents,* —— U.S. ——, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000) (invalidating ADEA as applied to states because Congress exceeded its Fourteenth Amendment authority to abrogate states' immunity); *City of Boerne v. Flores,* 521 U.S. 507, 536, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997) (invalidating the Religious Freedom Restoration Act of 1993 as an invalid exercise of Section 5 of the Fourteenth Amendment).

■ Nevertheless, the Supreme Court has not overruled *Garcia.* That decision, therefore, remains as controlling authority. The *Garcia* decision clearly states that the FLSA applies to states and their subdivisions. *Garcia v. San Antonio Metro. Transit Auth.,* 469 U.S. 528, 577, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985). While this Court may agree with Justice Powell that the *Garcia* reasoning—although not necessarily its basic holding—renders the Tenth Amendment meaningless when Congress acts pursuant to its commerce power, *Garcia* nevertheless remains the law of the land, and this Court must follow it. Defendant's Motion for Summary Judgment on grounds that the FLSA as applied to it violates the Tenth Amendment, therefore, must be denied.

### B. THE 7(K) EXEMPTION, 29 U.S.C. § 207(K)

DeKalb County next contends that it has satisfied all requirements of the partial exemption to the FLSA provided in 29 U.S.C. § 207(k), commonly referred to as the 7(k) exemption. Plaintiffs conversely contend that the County has not satisfied the 7(k) exemption requirements and, therefore, is subject to the general provisions of the FLSA. In general, the FLSA mandates that employers must pay their employees "time-and-a-half" overtime pay for all work performed in excess of forty hours per week. 29 U.S.C. § 207(a)(1); *Falken v. Glynn County,* 197 F.3d 1341, 1345 (11th Cir.1999). A partial exemption exists, however, for public agencies whose employees are engaged in either fire protection services or law enforcement activities. Specifically, the 7(k) exemption states:

> No public agency shall be deemed to have violated subsection (a) of this section with respect to the employment of any employee in fire protection activities or any employee in law enforcement activities (including security personnel in correctional institutions) if—(1) in a work period of 28 consecutive days the

employee receives for tours of duty which in the aggregate exceed the lesser of (A) 216 hours, or (B) the average number of hours (as determined by the Secretary pursuant to Section 6(c)(3) of the Fair Labor Standards Amendments of 1974) in tours of duty of employees engaged in such activities in work periods of 28 consecutive days in calendar year 1975; or (2) in the case of such an employee to whom a work period of at least 7 but less than 28 days applies, in his work period the employee receives for tours of duty which in the aggregate exceed a number of hours which bears the same ratio to the number of consecutive days in his work period as 216 hours (or if lower, the number of hours referred to in clause (B) of paragraph (1)) bears to 28 days, compensation at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(k). The United States Department of Labor by regulation has reduced the standard for the 28 day work period from 216 hours to 212 hours. 29 C.F.R. § 553.201.

The burden is on the employer to show that it is entitled to the 7(k) exemption. *Jones v. City of Columbus,* 120 F.3d 248, 252 (11th Cir.1997); *Wouters v. Martin County,* 9 F.3d 924, 929 (11th Cir.1993); *O'Neal v. Barrow County Board of Comm'rs,* 980 F.2d 674, 677 (11th Cir. 1993). The employer must meet this burden by showing that it has adopted a work period of between seven and 28 days for employees who are engaged in fire protection activities. 29 U.S.C. § 207(k). In this case, the evidence incontrovertibly shows that DeKalb County amended its merit system rules shortly after the Supreme Court's decision in *Garcia v. San Antonio Metro. Transit Auth.,* 469 U.S. 528, 577, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), and implemented a 28 day, 212–hour work cycle for its fire personnel. (Def. DeKalb County's Mot. for Summ.J., Ex. 5, ¶ 3 and

Ex. C, at 2.) This policy continues in effect today. (Def. DeKalb County's Mot. for Summ.J., Ex. 5, ¶ 3.) In fact, the DeKalb County Department of Public Safety Employee Manual includes a specific reference that fire personnel are to be paid on a 28 day, 212–hour work cycle. (R. Robertson Dep., Ex. 124 at § 3–2.8, at 3.) In light of Eleventh Circuit precedent finding that the 7(k) exemption is satisfied based on similar, and even lesser, evidence, this Court concludes that DeKalb County has adopted a 28 day, 212–hour work cycle for fire personnel. *See, e.g., Freeman v. City of Mobile,* 146 F.3d 1292, 1297 (11th Cir. 1998) (finding that city resolution, evidence of fourteen-day payroll, and memorandum of police chief sufficient to fall within 7(k) exemption); *Birdwell v. City of Gadsden,* 970 F.2d 802, 806 (11th Cir.1992) (affirming direct verdict that 7(k) exemption applied based on evidence that employees worked a regularly recurring period); *Kermit C. Sanders Lodge No. 13, Fraternal Order of Police v. City of Smyrna,* 862 F.Supp. 351, 355–56 (N.D.Ga.1994) (finding city's policy statement and memorandum from police chief sufficient to show city established work period within 7(k) exemption).

Plaintiffs contend that even if DeKalb County did adopt a policy pursuant to the 7(k) exemption, the exemption nevertheless does not apply to DeKalb County's firefighters because their primary duty is not providing fire protection services, but rather emergency medical services. To qualify for the 7(k) exemption, the plain language of the statute requires not only that a public employer adopt a policy pursuant to the 7(k) exemption but also that those employees to whom it applies must actually be engaged in "fire protection activities." 29 U.S.C. § 207(k). The Department of Labor, in promulgating regulations to enforce the statute, has defined "fire protection activities" with the following four requirements:

(1) one who is employed by an organized fire department or fire protection district; (2) who has been trained to the extent required by state statute or ordinance; (3) has the legal authority and responsibility to engage in the prevention, control, or extinguishment of a fire of any type; and (4) who performs activities which are required for, and directly concerned with, the prevention, control or extinguishment of fires, including such incidental non-firefighting functions as housekeeping, equipment maintenance, lecturing, attending community fire drills, and inspecting homes and schools for fire hazards.

29 C.F.R. § 553.210.

■ Plaintiffs argue that the fourth requirement has not been met in this case. They contend that the 7(k) exemption does not apply in this case because the fire protection activities listed in subsection (4) are not DeKalb County firefighters' "primary function." In short, Plaintiffs argue that although they wear firefighters' uniforms, Plaintiffs actually are emergency medical technicians. This Court finds, however, that although all DeKalb County firefighters are certified as EMT's, they do not only provide emergency medical services to the County's residents. The County's firefighters also perform those "activities which are required for, and directly concerned with, the prevention, control or extinguishment of fires, including such incidental non-firefighting functions as housekeeping, equipment maintenance, lecturing, attending community fire drills, and inspecting homes and schools for fire hazards." *Id.*

First, nothing in the 7(k) statutory exemption or its implementing regulations states that, for those employees who actually are engaged in "fire services activities," such activities must be their "primary function." Additional tests for an employer to qualify for the 7(k) exemption apply only to those employees who do not satisfy the "fire services activities" definition, but for whom the Department of Labor has chosen to include within the exemption because their activities either are "substantially related" to or are an "integral part" of fire services. *See* 29 C.F.R. § 553.210(a) ("The term ['fire protection activities'] would also include rescue and ambulance service personnel if such personnel form an *integral part* of the public agency's fire protection activities.") (emphasis added); 29 C.F.R. § 553.215(a) ("Ambulance and rescue service employees of a public agency other than a fire protection or law enforcement agency may be treated as employees engaged in fire protection or law enforcement activities . . . if their services are *substantially related* to firefighting or law enforcement activities . . . .") (emphasis added).

Second, for this Court to legislate judicially a "primary function" test could result in a more difficult standard for governments to meet in regards to their firefighters—for whom the 7(k) exemption clearly was created—than their EMT's—who are covered only because of the Department of Labor's regulatory grace. *Cf. O'Neal v. Barrow County Bd. of Comm'rs*, 980 F.2d 674, 680 (11th Cir. 1993) (quoting district court's finding, in regards to applying 80/20 rule to EMT's, that "it would be anomalous to offer firefighters 'more protection' [from the 7(k) exemption] than the ambulance service personnel whose status under the exemption is determined by the fact that they work in conjunction with the firefighting personnel.").

## C. THE UNITED STATES DEPARTMENT OF LABOR'S 80/20 REQUIREMENT

### 1. IMPERMISSIBLE EXERCISE OF REGULATORY AUTHORITY

The 80/20 rule is a Department of Labor regulation that allows an employer to claim

the 7(k) exemption even if it engages its firefighters in non-fire protection activities for no more than 20 percent of their work time. 29 C.F.R. § 553.212(a). DeKalb County contends that the United States Department of Labor's 80/20 requirement is an impermissible exercise of regulatory authority. The County contends that the 80/20 rule is contrary to the intent of the FLSA and its 7(k) exemption. An agency's regulations are given "controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Review of the Department of Labor regulation requires a two-step process. The first step requires the Court to make a determination of "whether the intent of Congress is clear; if so, the court must give effect to the unambiguously expressed intent of Congress." *McGregor v. Autozone, Inc.,* 180 F.3d 1305, 1307 (11th Cir. 1999). If Congressional intent is not unambiguously clear, "the court must determine whether the agency's answer to the question Congress left open 'reflects a permissible construction of the statute.'" *Id.* (quoting *Jaramillo v. INS,* 1 F.3d 1149, 1152 (11th Cir.1993)).

■ This Court concludes that the 80/20 rule does not constitute an impermissible exercise of regulatory authority by the Department of Labor. The 7(k) exemption statute specifically applies to employees in "fire protection activities," but the statute does not define the term. In the Conference Report, Congress directed the Secretary of Labor to "adopt regulations implementing these new and unique provisions, including regulations defining what constitutes a tour of duty." H.R.Conf. Rep. 93–953, 93rd Cong., 2nd Sess.1974, p. 2864. The statute applies to employees engaged in fire protection activities, and the Department of Labor's 80/20 rule merely attempts to determine those employees

who fall within that vague term. The regulation reflects a permissible construction of the statute and assists the Department of Labor in implementing the statute's underlying policies. This Court, therefore, cannot say that a requirement that firefighters spend 80 percent of their time in fire protection activities before their employer can be entitled to the 7(k) exemption is arbitrary, capricious, or manifestly contrary to the statute.

### 2. COMPLIANCE WITH THE REQUIREMENT

DeKalb County next contends that even if the Department of Labor's 80/20 requirement is a permissible exercise of regulatory authority, the County complied with it fully. Plaintiffs conversely contend that the County has not met the 80/20 requirement because its firefighters do not spend 80 percent of their time in fire protection activities. The 80/20 rule states as follows:

> Employees engaged in fire protection or law enforcement activities ... may also engage in some nonexempt work which is not performed as an incident to or in conjunction with their fire protection or law enforcement activities.... The performance of such nonexempt work will not defeat [the 7(k) exemption] unless it exceeds 20 percent of the total hours worked by that employee during the workweek or applicable work period.

29 C.F.R. § 553.212(a). In short, the rule precludes an employer from claiming the exemption if an otherwise covered employee works more than 20 percent of the time on non-exempt activities. *Wouters v. Martin County,* 9 F.3d 924, 929 (11th Cir. 1993). Determining whether the 80/20 rule has been satisfied requires a three-step factual analysis whereby (1) the total time worked and activities occurring during that time are gathered, (2) exempt and nonexempt time are separated, and (3) the

time spent on nonexempt work is divided by the total time worked to see whether it exceeds 20 percent of total working hours.

The Eleventh Circuit has noted that categorizing activities as either exempt or nonexempt sometimes can be difficult and has held that emergency medical dispatches, patient transfers, and accident scene emergency services unrelated to automobiles are nonexempt activities when performed by EMT's because they are not performed as an incident to or in conjunction with fire protection activities. *Jones,* 120 F.3d at 252; *Wouters,* 9 F.3d at 929, 932; *O'Neal v. Barrow County Bd. of Comm'rs,* 980 F.2d 674, 681 (11th Cir. 1993). Additionally, non-fire protection activities that benefit the employer generally constitute nonexempt work. *Wouters,* 9 F.3d at 929; *O'Neal,* 980 F.2d at 681. In these cases, the Eleventh Circuit has noted that in categorizing EMT's work time, the most critical question may be deciding how to classify hours spent at their workplace but not responding to any calls. *Jones,* 120 F.3d at 252. According to the Eleventh Circuit, station time spent awaiting calls is exempt, except to the extent that the employer requires employees to perform tasks unrelated to fire protection or law enforcement. *Wouters,* 9 F.3d at 932; *O'Neal,* 980 F.2d at 682. Notably, even for EMT's, all station time spent awaiting calls constitutes exempt work, even though they may receive more calls for activities that are nonexempt, because "the EMT's are awaiting fire and police calls just as they are awaiting medical emergency and accident calls." *O'Neal,* 980 F.2d at 682.

While these motions were pending, the Eleventh Circuit rendered another decision on the 80/20 rule that is especially applicable to the facts of this case. In *Falken v. Glynn County,* 197 F.3d 1341, 1349 (11th Cir.1999), the court distinguished those EMT's who are not also firefighters from employees who engage in the dual functions of firefighting and medi-

cal emergency services. It concluded that the latter group should be evaluated pursuant to a different standard for medical emergency calls. According to the court, even those medical emergencies unrelated to firefighting fall within the exempt category when performed dual-function EMT's/firefighters, in spite of the fact that these same activities are nonexempt when performed by EMS-only employees. *Id.* at 1350. The effect of this rule is that "an employer of dual-function EMS/firefighters will lose the fire protection activities exemption under the 80/20 rule only if the employees spend more than 20% of their total work on activities unrelated to *either firefighting or medical services.*" *Id.* at 1350–51 (emphasis added).

In applying the above cases to the facts of the case before this Court, the Court concludes that DeKalb County has satisfied the 80/20 rule and, thus, is entitled to the 7(k) exemption. The language of the 80/20 rule itself provides that the time Plaintiffs spend actually fighting fires is not included in the 20 percent of nonexempt time. 29 C.F.R. § 553.212(a) (noting that activities performed as an incident to or in conjunction with their fire protection are not included within nonexempt time). The *Wouters* and *O'Neal* cases clearly state that all station time spent awaiting calls is exempt, except to the extent that DeKalb County requires firefighters to perform tasks unrelated to fire protection. *Wouters,* 9 F.3d at 932. Some tasks, like housekeeping, equipment maintenance, lecturing, attending community fire drills, and inspecting homes and schools, are exempt, however, because they are considered fire protection activities as much as actually fighting fires. 29 C.F.R. § 553.210(a). Finally, the *Falken* case provides that all time spent by DeKalb firefighters on medical emergency calls is exempt from the 20 percent limit, regardless of whether the medical emergency relates to fire protection or instead in-

volves emergency medical dispatches, patient transfers, or accident scenes unrelated to automobile. *Falken,* 197 F.3d at 1350. In short, the only activities of De-Kalb County firefighters that count towards the 20 percent limit are those tasks unrelated to fire protection that DeKalb County requires its firefighters to do while awaiting calls.

After careful review of the evidence presented by both parties, this Court concludes that DeKalb County has satisfied the 80/20 rule. The only activity whatsoever on which Plaintiffs base their contention that DeKalb County does not satisfy the 80/20 rule is firefighters' responses to medical emergency calls. Plaintiffs contend that these calls are nonexempt. The recent *Falken* decision, however, clearly holds that these activities are exempt when performed by firefighters. For that reason, this Court finds that Plaintiffs have presented no evidence whatsoever that they engage in any nonexempt activities and concludes that DeKalb County's Motion for Summary Judgment must be granted on this claim.

### D. APPLICABILITY OF FLSA EXEMPTIONS TO BATTALION CHIEFS AND CAPTAINS

Plaintiffs claim that the FLSA entitles those firefighters with the rank of battalion chief or captain to the same overtime compensation rights as firefighters with lesser rank. DeKalb County responds that it is entitled to summary judgment on this claim because battalion chiefs and captains are exempt pursuant to the FLSA's executive and administrative exemptions from receiving any overtime compensation whatsoever. The FLSA exempts from its mandatory overtime provisions those employees who are employed in a "bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). An employee need only be employed in one of these capacities for its employer to claim the FLSA exemption.

The administrative exemption is satisfied if an employee (1) is compensated on a salary or fee basis; (2) is compensated at a rate of not less than $250 per week; and (3) exercises discretion and independent judgment in performing work directly related to management policies or general business operations of their employer. 29 C.F.R. § 541.2(e)(2). To determine whether the executive exemption applies, the Department of Labor has set forth both a "short test" and a "long test." *See Brock v. Norman's Country Mkt., Inc.,* 835 F.2d 823, 825 (11th Cir.1988) (defining "short test" versus "long test"). Pursuant to the "short test," an employee is deemed to be employed in an executive capacity if four requirements are met: (1) he is compensated on a salary basis; (2) he is compensated at a rate of not less than $250 per week; (3) his primary duty consists of management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision of it; and (4) he customarily and regularly directs the work of two or more other employees. 29 C.F.R. § 541.1(f); *Evans v. McClain of Ga., Inc.,* 131 F.3d 957, 965 (11th Cir.1997).

The Department has implemented regulations that clarify the meanings of some of the terms provided in the administrative and executive exemptions. An employee will be considered to be paid on a salary basis "if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of work performed," 29 C.F.R. § 541.118(a), except for "infractions of safety rules of major significance," 29 C.F.R. § 541.118(a)(5). A "primary duty" means the major part, or more than 50 percent, of the employee's time. 29 C.F.R. § 541.103. The following activities are considered within the realm of "management":

Interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing their work; ... appraising their productivity and efficiency for the purposes of recommending promotions or other changes in their status; handling their complaints and grievances and disciplining them when necessary; planning the work among workers; determining the type of materials, supplies, machinery or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety of the men and the property.

29 C.F.R. § 541.102(b).

Pursuant to the executive exemption's "long test," an employee may fall within the exemption, even if he does not spend more than 50 percent of his time on management duties, if other factors support the conclusion. These factors are (1) the relative importance of the managerial duties as compared with other types of duties; (2) the frequency with which the employee exercises discretionary powers; (3) his freedom from supervision; and (4) the relationship between his salary and the wages paid other employees for the same kind of nonexempt work that he performs. 29 C.F.R. § 541.103; *Brock v. Norman's Country Mkt., Inc.*, 835 F.2d 823, 825 (11th Cir.1988).

In this case, Plaintiffs, in their Complaint [Doc. 1] and throughout discovery, contended that DeKalb County's battalion chiefs and captains are entitled to overtime compensation because they do not actually engage in management duties as defined by the above Department of Labor regulations. Specifically, the Complaint alleged, "Plaintiffs [holding the rank of battalion chief or captain] have no discretion over the hours worked, or the scope and manner in which they fulfill

their job duties." In Plaintiffs' Brief in Opposition to Defendants' Motion for Summary Judgment [Doc. 88], however, Plaintiffs appear to have abandoned that argument and now contend that neither the executive nor administrative exemption applies to battalion chiefs and captains because the County can reduce their salaries based on work quality and quantity. DeKalb County objects to the Court considering this new argument because (1) Plaintiffs did not allege any factual basis for this claim in their Complaint and (2) it is a new legal theory entirely separate and distinct from the original one relating to the nature of battalion chiefs and captains' work. This Court should not consider a plaintiff's argument if it does not conform to the pleadings, unless the parties expressly or impliedly consent. *See* Fed. R.Civ.P. 15 (requiring amendment to pleadings, absent parties' express or implied consent). Nevertheless, the Court does so in this case, but only because the claim would fail anyway if Plaintiffs were allowed to amend their Complaint to conform to their new allegations. *See* Charles A. Wright, Arthur R. Miller & Mary Kay Kane, 10A Federal Practice and Procedure § 2722 (1998) ("[T]he court may deny leave to amend a pleading in such a case on the ground that the amendment would be futile, and grant summary judgment against plaintiff on the original complaint.").

The Supreme Court of the United States has determined that a successful challenge to the salary-basis test requires that there exist "either an actual practice of making such deductions or an employment policy that creates a 'significant likelihood' of such deductions." *Auer v. Robbins*, 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997). Courts applying the *Auer* decision have stated that a minimal number of violations does not constitute an actual practice or substantial likelihood of one being created. *See Morsch v. City of Los*

*Angeles,* No. 98–55497, 1999 WL 985279, at *1 (9th Cir. Oct. 27, 1999) (holding that three improper suspensions do not constitute an actual practice); *Aiken v. City of Memphis,* 190 F.3d 753, 762 (6th Cir.1999) (finding that one police captain receiving a deduction in pay does not establish an actual practice of applying deductions to captains); *Kendall v. Jones,* No. 98–9512, 1999 WL 357851, at *2 (2d Cir. May 26, 1999) (stating that "there is nothing in the Auer reasoning to suggest that two deductions by an employer would establish a sufficient likelihood to satisfy the actual practice test."); *DiGiore v. Ryan,* 172 F.3d 454, 465 (7th Cir.1999) (finding that five suspensions "do not demonstrate that improper deductions occurred with some frequency or under circumstances that were anything but unusual.").

██ In this case, Plaintiffs allege that a battalion chief and two captains were suspended without pay for violating work rules that in no way can be construed as "safety rules of major significance." According to Plaintiffs, a battalion chief was suspended without pay for failing to have the employees in his charge show up for a drug awareness class on a specific day. And two captains were suspended without pay for allegedly permitting or participating in downloading and disseminating a photograph of a nude woman on the Internet. DeKalb County responds that these three instances fail to show that an actual practice of docking battalion chiefs and captains' pay exists or that a substantial likelihood exists that one will be created. Based on the *Auer* decision and those cases applying its holding, this Court must agree with DeKalb County that Plaintiffs' reliance on three isolated instances of suspended pay alone do not show an "actual practice" or "substantial likelihood" of such practice sufficient to defeat the FLSA's executive and administrative exemptions from applying to DeKalb County battalion chiefs and captains. For that reason, this

Court must grant summary judgment in favor of DeKalb County on Plaintiffs' claim that all the battalion chiefs and captains are entitled to overtime compensation pursuant to the FLSA.

As to the one battalion chief and two captains who actually were suspended without pay, only two of them are among the Plaintiffs in this action. The Court grants summary judgment in favor of De-Kalb County against those two Plaintiffs also because the pleadings do not conform to the salary-based allegations they now raise. For these two Plaintiffs alone, however, the Court, in accordance with the Supreme Court's *Auer* decision, will reconsider its judgment and consider granting these Plaintiffs leave to amend the pleadings if DeKalb County does not reimburse them for the amount of their suspended pay. The *Auer* court wrote that a plaintiff who otherwise meets the executive exemption but whose pay actually has been deducted cannot succeed on an overtime claim if the employer reimburses the employee: "[W]here a deduction not permitted by [the salary-basis test] is inadvertent, or is made for reasons other than lack of work, the exemption will not be considered to have been lost if the employer reimburses the employee for such deductions and promises to comply in the future." *Auer,* 519 U.S. at 463–64, 117 S.Ct. 905 (citing 29 C.F.R. § 541.118(a)(6)) (citations omitted). DeKalb County thus may preserve these two Plaintiffs' exempt status by complying with the corrective provision of § 541.118(a)(6).

### E. SUPPLEMENTAL CLAIMS RELATED TO APRIL *1998* TORNADOES

Finally, DeKalb County contends that it is entitled to summary judgment on Plaintiffs' claim for overtime compensation for work performed in the aftermath of tornadoes that struck the county in April 1998. Plaintiffs contend that a memorandum to

them from then-Fire Chief Carlos Perez transformed their work cycle during the tornado clean-up effort to a 40 hour week and that all hours worked in excess of 40 constitute overtime. DeKalb County replies that Chief Perez did not possess the authority to change the firefighters' work cycle and, therefore, the County is entitled to judgment as a matter of law on this claim.

██ This Court agrees with the County that Chief Perez did not possess the authority to change the firefighters' work cycle. The DeKalb County Code of Ordinances provides that employees' work periods can be changed by the head of a department only if he obtains the concurrence of the County's Personnel Director and the approval of DeKalb County's Chief Executive Officer. DeKalb County, Ga., Code § 20–161(a) (1989). In this case, Plaintiffs have presented no evidence— and, indeed, do not even contend—that DeKalb County Chief Executive Officer Liane Levetan and Personnel Director Richard Conley authorized any change in Plaintiffs' work cycle during the period at issue. At most, Plaintiffs have presented evidence that the Department of Public Safety's own personnel director previously had told Chief Perez that there were occasions when Perez should transfer firefighters to a one-week, 40 hour work cycle. (Dep. of Carlos E. Perez, at 170–72.) Such statements by the Department's personnel director, however, did not entitle Chief Perez to change the work cycle during the April, 1998, tornado clean-up any more than if Perez had made such changes without anyone's prompting. Neither Perez, nor the Department's personnel director, possessed the authority to change the work cycle. Only the County's Chief Executive Officer and Personnel Director possessed that authority, and there is no evidence that they exercised it during the period at issue. Because an agent acting without authority cannot bind his principal,

*e.g., Collins v. Life Ins. Co. of Ga.,* 228 Ga.App. 301, 304, 491 S.E.2d 514 (1997), this Court must grant summary judgment in favor of DeKalb County on this claim.

## IV. CONCLUSION

For the reasons set forth below, Defendant's Motion for Summary Judgment [Doc. 76] is GRANTED. Plaintiffs' Motion for Summary Judgment [Doc. 75] is DENIED.