**Timothy DEBRECHT, Donald Bell, and Samuel Jackson, Plaintiffs,**

v.

**OSCEOLA COUNTY, Defendant.**

**No. 601CV1458ORL18JGG.**

United States District Court, M.D. Florida, Orlando Division.

Feb. 7, 2003.

Robert A. Sugarman, Sugarman & Susskind, P.A., Coral Gables, FL, for Timothy

Debrecht, Donald Bell, Samuel Jackson, plaintiffs.

Joyce Ackerbaum Cox, Akerman, Senterfitt & Eidson, P.A., Orlando, FL, for Osceola County, defendant.

## ORDER

G. KENDALL SHARP, Senior District Judge.

THIS CAUSE comes before the Court upon Defendant's motion for summary judgment (Doc. 32) to which Plaintiffs have responded in opposition (Doc. 44).

## I. BACKGROUND

Timothy Debrecht, Donald Bell, and Samuel Jackson ("Plaintiffs") filed this action pursuant to the Fair Labor Standards Act ("FLSA"), seeking damages for unpaid overtime compensation and injunctive relief for alleged retaliation. 29 U.S.C. §§ 207, 215.

Plaintiffs are employed by Osceola County ("Defendant") as Battalion Chiefs of the Emergency Services Department.[1] Plaintiffs allege they are required to work excessive hours without overtime compensation in violation of the FLSA. They further allege that in retaliation for pursuing their rights under the FLSA, Defendant reduced their rates of pay, reduced their sick leave sell-back compensation, and altered the terms and conditions of their employment.

## II. LAW

Rule 56(c) of the Federal Rules of Civil Procedure states the standard to be applied in summary judgment motions: "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers

---

1. Donald Bell and Samuel Jackson became Battalion Chiefs in 1992, and Timothy Debrecht was promoted to Battalion Chief in 1995. (Doc. 52 at 18.) Plaintiffs are the only three Battalion Chiefs in Osceola County.

to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Summary judgment "may be entered only where there is *no* genuine issue of material fact." *City of Delray Beach v. Agric. Ins. Co.*, 85 F.3d 1527, 1529 (11th Cir.1996). A material fact is one that might affect the outcome of the suit under governing law. *Mulhall v. Advance Sec., Inc.*, 19 F.3d 586 (11th Cir.1994). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden to show that no genuine issue of material fact remains for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant satisfies its burden when it demonstrates that the "facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute." *Delray Beach*, 85 F.3d at 1530. The burden then shifts to the nonmoving party to go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); it "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 257, 106 S.Ct. 2505.

A district court, in applying this standard, should view the evidence and its factual inferences in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Any reasonable doubt about the facts should be resolved in favor of the non-movant. *Delray Beach*, 85 F.3d at 1530. However, the court must avoid weighing conflicting evidence or making credibility determinations. "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." *Id.*

### III. APPLICATION

Section 207(a)(1) of the Fair Labor Standards Act requires that employees be paid time and a half for work over forty hours per week. 29 U.S.C. § 207(a)(1). Section 213(a)(1), however, exempts from that requirement "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). Osceola County treats all of its Battalion Chiefs as exempt under the provision. Defendant seeks summary judgment on the ground that Plaintiffs are subject to the FLSA's exemption, and thus, not entitled to receive overtime compensation. Plaintiffs oppose summary judgment arguing they are not employed in such a capacity and should not be treated as exempt.

■ Exemptions under the FLSA are to be construed narrowly against the Defendant, *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir.1995), and Defendant bears the burden of proving that Plaintiffs qualify for the exemption. *Atlanta Prof'l Firefighters Union, Local 134 v. City of Atlanta*, 920 F.2d 800, 804 (11th Cir.1991). Defendant argues that Plaintiffs qualify for exempt status because they are bona fide executive and/or administrative employees. (Doc. 33 at 2.) There are two tests for determining whether the Plaintiffs so qualify: the "short test" and the "long test." *Atlanta Prof'l Firefighters Union*, 920 F.2d at 804.

"[A]n employer seeking to establish an exemption first seeks to qualify under the 'short test;' if that effort fails, the 'long test' is used." *Id.* at 805. Defendant seeks to establish that Plaintiffs are exempt under the requirements of the short test. Pursuant to 29 C.F.R. §§ 541.1(f) and 541.2(e)(2), employees who are paid more than $250.00 per week "need satisfy only the 'short test'" to be qualified as executive or administrative employees.[2] *Thomas v. Jones Rest., Inc.,* 64 F.Supp.2d 1205, 1209 (M.D.Ala.1999). Plaintiffs stipulate they earn more than $250.00 a week, (Doc. 52 at 19); therefore the short test applies in this case.[3]

Under the short test, an employee may be classified as a bona fide *executive* employee if: (1) the employee is paid on a salary basis, and (2) the employee's primary duty consists of management of the enterprise in which the employee is employed or of a customarily recognized department thereof, and includes the customary and regular direction of the work of two or more other employees therein.[4] 29 C.F.R. § 541.1(f).

To be classified as a bona fide *administrative* employee, the short test requires: (1) that the employee be paid on a salary basis, and (2) that the employee's primary duty consist of the performance of office or nonmanual work directly related to management policies or general business operations of his employer, and include the exercise of discretion and independent judgment.[5] 29 C.F.R. § 541.2(e)(2).

## A. Salary Basis

■ Defendant contends that Plaintiffs qualify as executive and/or administrative employees because they are paid on a salary basis. Plaintiffs work alternating 24–hour shifts with 48 hours off after each, which equates to nine or ten shifts a month, for an average workweek of 53 hours.[6] (Doc. 52 at 18.) Plaintiffs are

---

**2.** In their Joint Final Pretrial Statement, the parties agree "the 'short test' provided by the Department of Labor Regulations applies because the Plaintiffs were compensated more than $250.00 per week." (Doc. 52 at 22.)

**3.** *See, e.g., Brock v. Norman's Country Mkt., Inc.,* 835 F.2d 823, 826 n. 2 (11th Cir.1988) (applying the short test because it was undisputed that the employees earned over $250.00 per week, and noting the long test would apply to employees who earn less than $250.00 but more than $155.00 per week); *Furlong v. Johnson Controls World Serv., Inc.,* 97 F.Supp.2d 1312, 1315 (S.D.Fla.2000) (holding since the plaintiff was paid more than $250.00 per week, "the Court shall apply the short test").

**4.** The long test applies to employees paid on a salary basis of *not less than $155 per week.* To qualify as an *executive* employee under the *long test,* the employee must: (1) perform management functions as his primary duty; (2) regularly direct the work of two or more other employees; (3) have authority to hire or fire other employees or whose recommendations as to the change of status of other employees will be given particular weight; (4)

regularly exercise discretionary powers; and (5) not devote more than 20 percent of his workweek to activities which are not directly related to performance of the work described in (1) through (4) above. 29 C.F.R. § 541.1.

**5.** To qualify as an *administrative* employee under the *long test,* the employee must: (1) perform office or nonmanual work directly related to management policies as his primary duty; (2) regularly exercise discretion and independent judgment; (3) regularly assist an employee employed in an executive or administrative capacity, OR perform under only general supervision work requiring special training, experience, or knowledge, OR execute under only general supervision special assignments and tasks; and (4) not devote more than 20 percent of his workweek to activities which are not directly related to performance of the work described in (1) through (3) above. 29 C.F.R. § 541.2.

**6.** Debrecht works "A" shift, Bell works "B" shift, and Jackson works "C" shift. (Doc. 52 at 18.)

paid a predetermined amount every two weeks regardless of the number of hours actually worked.[7] (Doc. 34, Mooney Aff. ¶ 7.) "An employee will be considered to be paid 'on a salary basis' within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation ...." 29 C.F.R. § 541.118(a). Plaintiffs testified in their depositions they are salaried employees and receive the same pay no matter how much or how little they work. (Bell Dep. at 39; Jackson Dep. at 46; Debrecht Dep. at 72, 74.)

Plaintiffs, however, contradict their prior testimony and argue they are not compensated on a salary basis because they are subject to suspension without pay for periods of less than a week under the Collective Bargaining Agreement ("CBA").[8] An employee is not considered paid on a salary basis if the predetermined amount is "subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.118(a). The effect of making such a deduction depends upon the facts in the particular case. 29 C.F.R. § 541.118(a)(6). To successfully challenge the salary basis test, Plaintiffs must demonstrate "either an actual practice of making such deductions or an employment policy that creates a 'significant likelihood' of such deductions."

*Auer v. Robbins,* 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997).

Plaintiffs argue their compensation is subject to reduction because a former Battalion Chief received a disciplinary suspension without pay for a period of less than a week for reasons other than a safety rule violation.[9] Plaintiffs claim that Roy Whitfield, who is *not* a Plaintiff in this case, was suspended without pay for sixteen hours for use of profanity. (Doc. 44 at 9.) Plaintiffs testified, however, that they personally have never been suspended and their pay has never been docked. (Bell Dep. at 54; Jackson Dep. at 129; Debrecht Dep. at 70.) A non-plaintiff's disciplinary suspension without pay is "not sufficient to invalidate the salary basis" for Plaintiffs. *Bolick v. Brevard County Sheriff's Dep't,* 937 F.Supp. 1560, 1571 (M.D.Fla.1996). *See also Aiken v. City of Memphis,* 190 F.3d 753, 762 (6th Cir.1999) (holding plaintiffs could not demonstrate an actual practice of making deductions where only one police captain received a deduction in pay); *Prickett v. DeKalb County,* 92 F.Supp.2d 1357, 1371 (N.D.Ga.2000) (holding the suspensions of one Battalion Chief and two Captains were not sufficient to establish an actual practice of making deductions). Plaintiffs state they are "aware of many other instances in which bargaining unit employees have been suspended" under the CBA, but failed to provide the Court with any evidence to substantiate their claim. (Doc. 45, ¶ 9; Doc. 46, ¶ 9.) Fur-

---

7. Plaintiffs' compensation is in the top five percent of the pay scale for all of Defendant's full-time employees. In 2002, Bell and Jackson earned $69,947.90, and Debrecht earned $65,444.59. (Doc. 52 at 19.) The average salary for Defendant's other full-time employees is $33,605.35. (Doc. 34, Wetzel Aff. ¶ 9.) In addition to salary, Plaintiffs receive sick leave, vacation time, floating holiday time, and five days paid administrative leave (in lieu of overtime).

8. Plaintiffs state "[n]o where in the collective bargaining agreement is it stated that battalion chiefs are not eligible for overtime pay." (Doc. 52 at 4.) The CBA, however, clearly states "[o]vertime hours and overtime compensation shall be defined and implemented as required by the Fair Labor Standards Act." (Doc. 32, Ex. 6 at 37.)

9. "Penalties imposed in good faith for infractions of safety rules of major significance will not affect the employee's salaried status." 29 C.F.R. § 541.118(a)(5).

thermore, Whitfield has not served as Battalion Chief since 9 March 1997. (Doc. 33 at 7; Doc. 34, Wetzel Aff. ¶ 16.) His suspension must have therefore occurred more than four years prior to Plaintiffs' filing of this lawsuit. Thus, even if Whitfield's suspension was sufficient to invalidate Plaintiffs' salary basis, it falls outside the statute of limitations period.[10] *Bolick,* 937 F.Supp. at 1571.

Because Plaintiffs failed to demonstrate that Defendant has an actual practice of applying salary deductions to Battalion Chiefs or that an employment policy exists which creates a significant likelihood of such deductions, the Court finds that Defendant satisfied its burden of proving that Plaintiffs are paid on a salary basis. Therefore, the first prong of the short test is satisfied. *See Atlanta Prof'l Firefighters Union,* 920 F.2d at 805; *Quirk v. Baltimore County, Maryland,* 895 F.Supp. 773, 783 (D.Md.1995).

### B. Primary Duty

#### 1. Executive Employee

■ As for the second prong of the short test, Defendant must show that Plaintiffs' primary duty consists of management of the enterprise in which they are employed or of a department thereof. 29 C.F.R. § 541.1(f). Defendant must also show that Plaintiffs customarily and regularly direct the work of two or more other employees therein. *Id.* "A determination of whether an employee has management as his primary duty must be based on all the facts in a particular case." 29 C.F.R. § 541.103. Primary duty ordinarily means a major part, or over fifty percent, of an employee's time. 29 C.F.R. § 541.103. "Time alone, however, is not

the sole test . . . ." *Id.* If an employee does not spend fifty percent of his time performing managerial functions, other factors may nevertheless establish management as his primary duty.[11] Such factors include the importance of the managerial duties compared to other types of duties, the frequency with which the employee exercises discretionary powers, and the employee's freedom from supervision. *Id.*

Defendant argues that Plaintiffs qualify for the executive exemption because their primary duty consists of performing managerial and supervisory functions. Such functions include: (1) interviewing, selecting, and training employees; (2) adjusting their hours of work; (3) directing their work; (4) appraising their work for the purpose of recommending promotions or other changes in their status; (5) handling their complaints and grievances and disciplining them; (6) planning the work; (7) determining techniques to be used; (8) apportioning the work among employees; (9) determining the materials, supplies, machinery or tools to be used or purchased; and (10) providing for the safety of the men and the property. 29 C.F.R. § 541.102(b). The record in this case clearly demonstrates that Plaintiffs perform a majority of these management duties.

The Emergency Services Department of Osceola County contains seventeen fire stations, fifteen of which are currently active. Plaintiffs, while on duty, are in charge of all the active fire stations in the county. Among those stations, approximately 132 combat employees rank below Plaintiffs and include, in rank order, lieutenants, engineers, paramedics, and fire-

---

10. The statute of limitations period under the FLSA is two years for a cause of action arising out of non-willful violations, and three years for willful violations. 29 U.S.C. § 255(a).

11. Plaintiffs argue they spend only fifteen percent of their time engaged in administrative, managerial, or executive duties. (Doc. 45, ¶ 27; Doc. 46, ¶ 27.)

fighters. (Doc. 52 at 18.) Plaintiffs rank immediately below the Fire Chief, who heads the Department, and they report directly to him.[12] The Fire Chief does not give orders directly to combat personnel; all orders go through Plaintiffs. (Jackson Dep. at 90.)

The primary goal of Plaintiffs' position as Battalion Chief is to supervise the day-to-day operations of the combat and shift personnel. (Bell Dep. at 42, 165; Jackson Dep. at 71, 207; Debrecht Dep. at 53, 297.) They spend about fifty percent of their time performing direct and indirect supervision. (Bell Dep. at 200; Jackson Dep. at 247.) Once a Battalion Chief arrives upon a fire or emergency scene, he automatically assumes command.[13] While in command, Plaintiffs direct and control all of the fire or emergency operations. This requires them to make strategic decisions such as whether to call additional units to the scene and whether additional resources are necessary to control the scene. (Jackson Dep. at 141–42.) Such command gives Plaintiffs authority over everyone on the scene, including units that respond from other counties or cities. (Doc. 32 at 9.) According to Fire Chief Adams,[14] Battalion Chiefs are "responsible for the entire county" and "have discretionary responsibility to respond to any scene that sounds like it's not being managed well or there's potential for it not to be managed well." (Adams Dep. at 78.)

Plaintiffs also prepare annual performance evaluations of the eight lieutenants on each of their shifts. (Doc. 52 at 19.) They are responsible for disciplining lieutenants and have the authority to administer verbal and written reprimands without the Fire Chief's approval. *Id.* Although the Fire Chief has complete discretion with regard to promoting employees, he seeks input from the Battalion Chiefs before making a final decision. (Adams Dep. at 27; Jackson Dep. at 198.) Plaintiffs are also involved in the hiring process, (Bell Dep. at 92; Jackson Dep. at 168), make employee suspension and termination recommendations, and notify employees of their termination (Adams Dep. at 29).

Furthermore, Plaintiffs have chaired several committees responsible for developing policies and procedures for the Department. Plaintiff Debrecht chaired the Awards Committee and the Standard Operating Guidelines Committee, and represented Osceola County in meetings with the City of Kissimmee.[15] Plaintiff Jackson chaired the Apparatus Committee, the Uniform Committee, and served on a committee that devised the accountability system for the Department.[16] Plaintiff Bell

---

**12.** While on their shifts, Plaintiffs meet with the Fire Chief daily to discuss Department matters. (Doc. 32 at 8.)

**13.** The General Rules and Regulations of the Osceola County Fire/Rescue Department provide: "The Battalion Chief shall assume command after transfer of command procedures have been completed," and "[a]ssumption of command is discretionary for the Fire Chief." (Doc. 32, Ex. 3 at 5.) Fire Chief Adams drafted a memorandum that states Battalion Chiefs will assume command once they arrive on a scene "no matter what." (Adams Dep. at 76–77.)

**14.** Don Adams served as Fire Chief from April 2000 to October 2002. (Doc. 55 at 2.)

**15.** The Awards Committee made recommendations to issue awards to firefighters, and Debrecht assisted in writing the Department's Award Policy. The Standard Operating Guidelines Committee rewrote the non-emergency guidelines used by the Department. (Doc. 32 at 14.)

**16.** The Apparatus Committee made recommendations as to what fire engines and ladder trucks should be purchased. The Uniform Committee made recommendations, which were adopted, as to what uniforms the Department should purchase. (Doc. 32 at 14.) The accountability system was adopted without change by Fire Chief Magnaghi, and is used to track firefighters at a fire or emergency scene. (Jackson Dep. at 196–98.)

chaired the Protective Clothing Committee, which provided recommendations as to what gear employees should use. He and Plaintiff Debrecht also took part in the CBA negotiations in 2000. (Bell Dep. at 201–2; Debrecht Dep. at 318.)

Based on the evidence presented in the record, the Court finds that Plaintiffs' responsibilities clearly consist of management of the enterprise in which they are employed. Defendant satisfied its burden of proving that Plaintiffs qualify as executive employees and therefore satisfied the second prong of the short test.

### 2. Administrative Employee

██ Defendant contends that even if Plaintiffs are not exempt as executive employees, the second prong of the short test is met because Plaintiffs qualify as administrative employees.[17] To qualify as bona fide administrative employees, Defendant must show that Plaintiffs' primary duty consists of the performance of office or nonmanual work directly related to management policies. 29 C.F.R. § 541.2(e)(2). The phrase "directly related to management policies" is not limited to employees who actually formulate management policies, but includes employees whose responsibility it is to carry those policies out. 29 C.F.R. § 541.205(c). Defendant must also show that Plaintiffs exercise discretion and independent judgment. 29 C.F.R. § 541.2(e)(2).

Defendant argues that Plaintiffs qualify for the administrative exemption because Plaintiffs implement the Department's management policies. Although Plaintiffs act upon directions of the Fire Chief, Battalion Chiefs generally have discretion in implementing these directions. Plaintiffs, however, argue that most of their decisions are subject to review and approval. "The fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment . . . ." 29 C.F.R. § 541.207(e)(1). Plaintiffs further argue they do not exercise discretion and, if they do, their discretion is strictly limited by the CBA and the county's Standard Operating Guidelines. (Doc. 45, ¶¶ 20–21; Doc. 46, ¶¶ 20–21.) Exercise of discretion and independent judgment involves "the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.207(a). The record clearly demonstrates that Plaintiffs' primary responsibilities require the exercise of such discretion and judgment.[18]

Plaintiffs are required to respond to only the more serious fire or emergency scenes and have the discretion to attend others. Battalion Chiefs do not physically fight fires themselves. (Bell Dep. at 129; Jackson Dep. at 144; Debrecht Dep. at 191) Likewise, they are not assigned manual tasks around the fire stations such as sweeping, mopping, and cleaning equipment. (Doc. 32 at 14.) Plaintiffs are responsible, however, for handling interoffice paperwork and the mail of the entire Department because all mail is delivered to the Battalion Chiefs' office.[19] (Doc. 32 at 13.)

---

**17.** Defendant is only required to prove that Plaintiffs are employed in one of three capacities under 29 U.S.C. § 213(a)(1): executive, administrative, or professional. *Prickett v. DeKalb County*, 92 F.Supp.2d 1357, 1369 (N.D.Ga.2000).

**18.** The Collective Bargaining Agreement specifically states, for example, the "Battalion Chiefs have the discretion to make exceptions" to the policy regarding medical personnel at a fire scene. (Doc. 32, Ex. 8 at 65.)

**19.** The Battalion Chiefs' office is located at Station 92. (Adams Dep. at 21.)

Plaintiffs are also responsible for handling all manning issues on their shifts. (Jackson Dep. at 82.) In other words, they must make sure that each shift is appropriately staffed. Plaintiffs are required, in accordance with county policies and the CBA, to fill any vacancies and hire overtime if necessary.[20] All combat employees are required to submit their leave requests to Plaintiffs. (Jackson Dep. at 113.) Plaintiffs have authority to grant or deny all leave requests for the lower ranks, and the Fire Chief generally does not override Plaintiffs' decisions. (Doc. 32 at 11.) Employees seeking to transfer to different stations must also submit written requests to Plaintiffs for approval. (Doc. 32, Ex. 6 at 26.)

Furthermore, Plaintiffs are responsible for resolving employee complaints and take part in personnel investigations. Under the CBA, Battalion Chiefs are designated as "Step One" in the grievance process. (Doc. 32, Ex. 8 at 48–9.) They are required to determine whether discipline is appropriate and to communicate their decisions in writing to the employees. (*Id.* at 49.)

Plaintiffs argue that a majority of their shifts are spent "waiting to respond to calls, engaging in physical training, taking meals, and resting" and that none of those activities involve management or discretion. (Doc. 44 at 17.) This waiting time, however, "assumes the character of the work [P]laintiffs perform once dispatched to an emergency scene." *Smith v. City of Jackson, Mississippi*, 954 F.2d 296, 299 (5th Cir.1992) (holding, in a case with virtually identical facts, once the Battalion Chief arrives on scene he assumes command, and therefore the time spent waiting is "necessarily incident" to directing operations at a fire scene).

Based on the evidence presented in the record, the Court finds that Plaintiffs' responsibilities clearly consist of the performance of office or nonmanual work directly related to management policies. Defendant satisfied its burden of proving that Plaintiffs are paid on a salary basis and qualify as administrative, as well as executive, employees. Plaintiffs are therefore exempt from the overtime provisions of the FLSA.

## C. Retaliation

■ Pursuant to 29 U.S.C. § 215(a)(3), it is unlawful for any person to "discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding" under the FLSA. A prima facie case of retaliation requires Plaintiffs to demonstrate the following: (1) they engaged in activity protected under the FLSA, (2) they subsequently suffered adverse action by Defendant, and (3) a causal connection existed between their activity and the adverse action. *Wolf v. Coca–Cola Co.*, 200 F.3d 1337, 1342–43 (11th Cir. 2000). Plaintiffs must prove that Defendant would not have taken the adverse action "but for" Plaintiffs' assertion of their FLSA rights. *Wolf*, 200 F.3d at 1343. The adverse action must therefore be subsequent to Plaintiffs' assertion.

In December 2000 and January 2001, Plaintiff Samuel Jackson filed requests for overtime for attending a staff meeting while off duty, and for working on his day off. (Doc. 32, Ex. 13.) Fire Chief Adams denied both requests. In January 2001, Jackson filed formal grievances which were denied pursuant to the FLSA. (Doc. 32, Exs.15, 22.) Jackson appealed to the County Manager who upheld Chief Adams'

---

**20.** The CBA provides that overtime "will be assigned by the Battalion Chief in the following manner; *unless an unusual operational* *situation dictates otherwise ....*" (Doc. 32, Ex. 8 at 37.)

denials. Neither Debrecht nor Bell filed formal grievances regarding overtime.

■ Plaintiffs allege they suffered adverse actions by Defendant as a result of filing the formal grievances. According to Plaintiff Bell, Defendant retaliated "when the grievances started." (Bell Dep. at 218.) Defendant argues that because only one Plaintiff filed grievances, only one Plaintiff, Samuel Jackson, engaged in protected activity under the FLSA. Defendant therefore claims that Debrecht and Bell cannot rely on Jackson's grievances alone to support their retaliation claims. Debrecht and Bell argue, however, that they made verbal complaints to various people on several occasions regarding overtime. Unofficial complaints, such as those made by Plaintiffs, constitute an assertion of rights protected under the statute. *EEOC v. White and Son Enter.*, 881 F.2d 1006, 1011 (11th Cir.1989). All three Plaintiffs therefore engaged in protected activity under the FLSA.

■ Plaintiffs allege that as a result of their complaints, Defendant intentionally reduced their rates of pay, reduced their sick leave sell-back compensation, and altered the terms and conditions of their employment. Defendant argues that Plaintiffs' retaliation claim must fail because the alleged adverse actions are in no way related to Plaintiffs' complaints and were done for legitimate business reasons.

Plaintiffs claim the Fire Chief "inexplicably signed a change of rate" for the Battalion Chiefs which reduced their sick leave sell-back compensation.[21] (Doc. 52 at 4.) However, Plaintiffs admit they are unaware of who made the decision to change the payroll records. Plaintiffs also claim that Defendant retaliated against them by suspending their telephone conference call and voicemail capabilities, and by replacing their Ford Expedition sports utility vehicle with a Dodge Ram pick-up truck.[22] Again, Plaintiffs admit they are unaware of who made these decisions. (Bell Dep. at 220.)

The record shows the decision to change the payroll records was made solely by the Human Resources Manager, Paul Wetzel. (Doc. 34, Wetzel Aff. ¶ 5.) Wetzel corrected the records because Plaintiffs were incorrectly designated as working forty hours per week, or 2,080 hours per year, instead of fifty-three hours per week, or 2,756 hours per year. Wetzel notified the Fire Chief and other individuals of the error via e-mail on 4 October 2000. (Doc. 34, Wetzel Aff. ¶ 5.) Wetzel states his decision "had absolutely nothing to do with any complaints the Battalion Chiefs may have made under the Fair Labor Standards Act" and that he was unaware Plaintiffs' sick leave sell-back compensation would be affected. (Doc. 34, Wetzel Aff. ¶ 8.) After the records were corrected, Plaintiffs' annual salaries remained exactly the same. More importantly, Wetzel's decision to correct the records occurred in October 2000, *before* Plaintiffs filed any complaints. Plaintiffs therefore failed to prove Defendant would not have changed the payroll records "but for" their FLSA complaints.

The record further shows the decision to suspend conference call and voicemail capabilities was made by the Public Safety Division Administrator, Tad Stone. Stone suspended these capabilities because confi-

---

21. Battalion Chiefs are entitled to sell back their accrued sick leave (in excess of 240 hours) at their hourly rate of pay. (Doc. 34, Mooney Aff. ¶ 9.) To determine the hourly rate, their annual salaries are divided by the number of hours worked annually. Plaintiffs estimate their loss of sick leave as follows:

Jackson—$1,723.20; Bell—$1,723.20; and Debrecht—$1,540.80. (Doc. 32 at 21.)

22. Battalion Chiefs use a county-issued vehicle assigned exclusively to them. (Doc. 52 at 18.)

dential information was leaked to the press during a staff meeting. (Adams Dep. at 105.) Fire Chief Adams testified in his deposition the fact that conference call capabilities were taken away "had nothing to do with the lawsuit." (*Id.* at 104.) Moreover, the conference call and voicemail features were temporarily suspended for the *entire* Department, including the Fire Chief. (*Id.* at 105.) The decision to replace the sports utility vehicle was also made by Stone because he believed the pick-up truck was a more appropriate vehicle for the rural county. That decision was not made until August 2002. (Adams Dep. at 109.)

The record clearly demonstrates that although Plaintiffs engaged in protected activity under the FLSA, Plaintiffs failed to prove they suffered adverse action by Defendant and that Defendant would not have taken the action "but for" Plaintiffs' assertion of their rights. Plaintiffs' evidence is therefore insufficient to produce a genuine issue of material fact to preclude summary judgment.

## IV. CONCLUSION

Having determined no genuine issue of material fact remains to be tried and that Defendant is entitled to judgment as a matter of law, Defendant's motion for summary judgment (Doc. 32, filed 1 October 2002) is **GRANTED**. Accordingly, Plaintiffs' complaint is **DISMISSED**. The Clerk is hereby directed to close the case.